Daniel A. Saunders (CA Bar No. 161051)
KASOWITZ BENSON TORRES LLP
2029 Century Park East, Suite 2000N
Los Angeles, California 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901
E-mail: dsaunders@kasowitz.com

*Attorneys for Plaintiff Ryan Drexler*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| RYAN DREXLER,<br><br>Plaintiff,<br><br>v.<br><br>BRADFORD BILLET,<br><br>Defendant. | CASE NO. 2:17-cv-08552<br><br>**COMPLAINT FOR:**<br><br>**1) FRAUDULENT INDUCEMENT;**<br>**2) BREACH OF CONTRACT; AND**<br>**3) INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ryan Drexler ("Drexler"), by and through his undersigned counsel, for his Complaint against defendant Bradford Billet ("Billet"), alleges, upon knowledge as to himself and otherwise upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and this action is between citizens of different States.

2. This Court has personal jurisdiction over Billet because Billet directed actions into the State of California by entering into a contract with Drexler, which Drexler executed in the State of California, and by commencing an action in this Court against Drexler.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the asserted claims occurred in this district.

## PRELIMINARY STATEMENT

4. This action arises out of Billet's fraudulent misconduct and breach of confidentiality agreements in obtaining and subsequently using highly confidential information concerning Drexler in an effort to extort millions of dollars from Drexler and his sister Jodi Drexler-Billet, Billet's estranged wife.

5. In the divorce proceedings between Billet and Ms. Drexler-Billet, which are pending in New York, Billet alleges that Drexler, Ms. Drexler-Billet and other members of the Drexler family have diverted proceeds from the sale of the family business to prevent those proceeds from being included in the marital estate. In 2014, Ms. Drexler-Billet produced to Mr. Billet documents concerning the Drexlers' business and personal financial interests pursuant to a confidentiality agreement in the divorce proceedings that expressly prohibits Billet from using the information contained in those documents in any other litigation, and that provides for injunctive relief in the event of breach thereof.

6. When the confidential information he received from Ms. Drexler-Billet did not support his allegations against the Drexlers, Billet sought to obtain additional information from

Drexler, the CEO and chairman of the board of a publicly-traded company, MusclePharm Corporation ("MusclePharm"), through third-party subpoenas to Drexler. The New York matrimonial court then quashed Billet's subpoenas, refused to require Drexler -- who lives in Los Angeles and who is not subject to the jurisdiction of the New York courts -- to produce any documents in response to those subpoenas, and required Billet to enter into a confidentiality agreement as a condition to deposing Drexler. Billet refused to do so. Instead, he improperly sought to circumvent the court's ruling by adding Drexler as a defendant to his divorce proceedings with Ms. Drexler-Billet.

7. Even worse, Billet then initiated a "scorched-earth" lawsuit in New York Supreme Court against 35 defendants, including Drexler, Ms. Drexler-Billet, their father, the estate of their deceased mother, other members of the Drexler family, MusclePharm and numerous other entities with which the Drexlers do business. Billet's initial filing in that lawsuit did not contain any factual allegations (because it was filed pursuant to a New York procedure that permits commencement of an action through the filing of a bare summons with notice). Instead, Billet's filing merely identified 13 different causes of action, including claims for theft, fraud and conspiracy. Even though Billet's filing did not contain any factual allegations (and the Billet divorce proceedings are sealed pursuant to New York law), the very next day the *New York Post* published an article with the headline "Trust-funder wife ripped me off in business deal: agency chief," in which Billet accused the Drexlers of stealing $30 million dollars from him.

8. In response to the lawsuit filed by Billet, the court in the Billets' matrimonial proceeding ruled that Billet would not be permitted to conduct any other third-party discovery. In doing so, the court specifically stated that it would not permit Billet to use the divorce proceedings to obtain discovery for use in the collateral litigation that Billet had commenced against Drexler, Ms. Drexler-Billet and others.

9. Notwithstanding, and in flagrant violation of the court's order, Billet subsequently served subpoenas on Drexler in California, on a bank in Colorado where Drexler does business, and on other non-parties. Once again, the court in the divorce proceedings quashed the subpoenas, and this time, held Billet in contempt and sanctioned him for his misconduct.

10. Having failed to obtain discovery from Drexler, having failed to join him in the divorce proceedings, and having been held in contempt for ignoring court orders precluding discovery from Drexler or any other non-party, Billet engaged in further misconduct in an effort to induce Drexler to provide him with information concerning the Drexlers' financial affairs. Specifically, Billet represented to Drexler that he would maintain the confidentiality of any information that Drexler provided to Billet, and that he would not use such information for any purpose other than his divorce proceedings with Ms. Drexler-Billet.

11. Unbeknownst to Drexler at the time, Billet never intended to refrain from using the information Drexler provided, and instead intended to use such information to craft a complaint in Billet's pending action in New York and to initiate an additional lawsuit in this Court, which is precisely what Billet did. Thus, in March 2017, Drexler -- unaware of Billet's true intentions – entered into a confidentiality agreement with Billet in the divorce proceedings, and provided Billet with confidential information concerning Drexler's and the Drexler family's financial affairs pursuant to that agreement. The 2017 confidentiality agreement -- like the confidentiality agreement in 2014 -- prohibits Billet from using the information produced by Drexler in any litigation other than the Billets' divorce proceedings, and provides for injunctive relief in the event of a breach thereof.

12. After obtaining confidential information from Drexler pursuant to the parties' confidentiality agreement, Billet -- consistent with his undisclosed intentions -- breached the confidentiality agreement by filing a complaint in the pending New York Supreme Court action

and commencing an action in this Court by filing a substantially similar complaint. In the complaints in both the New York and California actions, Billet alleges that a litany of named defendants engaged in, among other things, a racketeering conspiracy to deprive Billet of marital assets. Although the conclusions reached in both complaints are patently false, the factual allegations are plainly derived from the confidetial information provided by the Drexlers pursuant to the 2014 and 2017 confidentiality agreements -- a violation of both of those agreements.

13. Billet's improper use of the information that Drexler provided pursuant to the confidentiality agreements has caused significant and irreparable harm to Drexler and is likely to cause significant additional harm, the result that Billet intended. For example, as would be expected, MusclePharm's board of directors, its lenders and other financial institutions, among other entities, have inquired concerning Billet's lawsuits, and more inquiries are almost certain to occur, having a chilling effect on Drexler's ability to conduct his business affairs. As a result, Billet, through false pretenses, has been able to inflict significant harm upon the business interests of Drexler -- a non-party to Billet's divorce proceedings -- by disclosing confidential information that Billet obtained through false representations.

14. Thus, by this action, Drexler seeks to recover the damages caused by Billet's fraudulent misconduct and by his flagrant breaches of the parties' confidentiality agreements. Moreover, Drexler seeks a permanent injunction precluding Billet from prosecuting either the New York or California actions, from further uses of the confidential information provided by Drexler, and from further breaches of the parties' confidentiality agreements, along with a mandatory injunction requiring Billet to dismiss the lawsuits he wrongfully filed.

## **THE PARTIES**

15. Plaintiff Drexler is an individual residing in Los Angeles County in the State of California.

16. Defendant Billet is an individual residing in New York County in the State of New York.

## FACTUAL ALLEGATIONS

**A. Billet's Divorce From Jodi Drexler-Billet.**

17. Billet and Jodi Drexler-Billet ("Drexler-Billet") were married in 1996.

18. In October 2013, Billet filed for divorce. Billet and Drexler-Billet's divorce proceeding is pending in the Supreme Court of the State of New York, New York County, Index No. 350090/2013 (the "Matrimonial Action").

19. In the Matrimonial Action, Billet -- who is unemployed -- alleges that he is entitled to millions of dollars from the proceeds of the sale of the Country Life Group ("Country Life"), a business previously owned by Drexler-Billet and her family. To that end, Billet alleges in the Matrimonial Action that Drexler-Billet and her family diverted the proceeds of the sale in an effort to keep them from Billet.

20. On April 3, 2014, Billet and Drexler-Billet entered into a confidentiality agreement (the "2014 Confidentiality Agreement") to enable the parties in the Matrimonial Action to exchange documents in that action (and solely in that action).

21. The 2014 Confidentiality Agreement provides that all non-public documents and information produced by Drexler-Billet shall be deemed confidential and proprietary, and that such information could be used solely in connection with matrimonial dispute between the parties.

22. The 2014 Confidentiality Agreement also provides that either party shall be entitled to temporary and permanent injunctive relief from any court of competent jurisdiction in the event of a breach of the agreement.

23. Pursuant to the 2014 Confidentiality Agreement, Drexler-Billet produced confidential documents and information concerning her and her family's financial interests,

including information concerning the sale of Country Life and information concerning Drexler's financial interests.

**B. <u>Billet's Efforts To Obtain Discovery From Drexler in the Matrimonial Action.</u>**

24. In or about April 2015, Billet issued a number of subpoenas to Drexler in the Matrimonial Action, even though he was not -- and is not -- a party to that action. By those subpoenas, Billet sought the production of documents and deposition testimony from Drexler.

25. However, on April 18, 2016, the Court in the Matrimonial Action (the "Matrimonial Court") entered an Order severely restricting the information that Billet would be permitted to obtain from Drexler (the "April 18, 2016 Order"). Specifically, the April 18, 2016 Order prohibits Billet from obtaining any documents from Drexler and prohibits Billet from inquiring about Drexler's finances. The April 18, 2016 Order also provides that Billet could only depose Drexler if Drexler consented to such a deposition and if the parties entered into a confidentiality agreement.

26. Pursuant to the April 18, 2016 Order, Drexler consented to his deposition and agreed to enter into a confidentiality agreement. However, Billet -- displeased with the Matrimonial Court's severe limitation on the scope of the discovery he could obtain from Drexler -- refused to proceed.

27. Instead, in September 2016, Billet sought to circumvent the Matrimonial Court's ruling by moving to join Drexler as a defendant in the Matrimonial Action.

28. Shortly thereafter, on September 13, 2016, Billet also initiated an action in the Supreme Court of New York, New York County, styled *Billet v. Jodi Drexler-Billet, et al.*, Index No. 654844/2016 (the "New York Action"). In the New York Action, Billet named as defendants Drexler, Drexler-Billet, other members of the Drexler family, the Drexlers' accounting firm,

financial and business advisors, Country Life, and numerous entities affiliated with Drexler and the Drexler family, including, but not limited to, MusclePharm.

29. Billet initiated the New York Action without making a single factual allegation against the defendants. Instead, Billet utilized a procedure under New York law that permits the filing of a bare summons with notice -- without a complaint -- which merely requires the identification of the asserted causes of action. Thus, in the summons with notice that Billet filed in the New York Action, Billet alleged 13 claims against 35 defendants, including claims for theft, fraud and conspiracy.

30. Although Billet did not make any factual allegations in the summons with notice that he filed in the New York Action (which summons he did not try to serve for more than a year), Billet -- either directly or through his representatives -- made a number of statements concerning Drexler to a *New York Post* reporter on or before the day he filed the New York Action. Indeed, on September 14, 2016 (the day after Billet filed the New York Action), the *New York Post* published an article with the headline "Trust-funder wife ripped me off in business deal: agency chief" (the "*Post* Article"). The *Post* Article states, among other things:

> A lifelong city agency executive -- whose resume spans the Giuliani, Bloomberg and de Blasio administrations -- is suing his trust-funder wife and her kin for $50 million, saying they ripped him off in the sale of their family pharmaceutical business. . . . Billet says [Jodi] has lied in their divorce proceeding by claiming she's broke, when she's really hidden an estimated $30 million she made from the sale of the family business with her brother, the source said.

31. Because the *Post* Article's reference to "kin" indisputably refers to Drexler, the *Post* Article, in substance, states that Drexler stole from Billet and diverted and/or is hiding $30 million in assets for the benefit of Drexler-Billet.

32. Moreover, the statements contained in the *Post* Article plainly were made by Billet and/or his representatives, based on information produced pursuant to the 2014 Confidentiality Agreement, inasmuch as the summons with notice in the New York Action does not contain the

statements -- indeed, does not contain any allegations -- and the court file in the Matrimonial Action cannot be accessed by the public.

**C. <u>Billet's Violation Of Court Orders And Contempt of Court.</u>**

33. On September 29, 2016, the Matrimonial Court held a hearing concerning Billet's motion to join Drexler as a defendant in the Matrimonial Action and Billet's continued requests to depose Drexler and Drexler-Billet's and Drexler's father, Halbert Drexler. At that hearing, the Matrimonial Court essentially rescinded the April 18, 2016 Order (which had permitted a limited deposition of Drexler under certain conditions), and refused to permit any discovery against non-parties, including the Drexlers, to proceed, given the New York Action that Billet had initiated. Indeed, the Matrimonial Court specifically stated that it was refusing to permit Billet to seek discovery from non-parties who Billet was suing in a separate litigation: "I am clearly not directing nonparty depositions because that would be in the nature of pre-action disclosure at this point. They [Ryan and Halbert Drexler] are not just third parties that are coming in to assist in discovery."

34. Thus, on September 30, 2016, the Matrimonial Court entered an order quashing the outstanding subpoenas on Drexler and other non-party entities.

35. Notwithstanding the Matrimonial Court's Order, Billet -- in flagrant violation of the Court's order -- served non-party subpoenas seeking discovery concerning Drexler's financial affairs. Specifically, Billet domesticated and served a subpoena on Drexler in California seeking financial documents and deposition testimony. And Billet served a subpoena on Drexler's bank in Colorado.

36. In light of these brazen violations of the Matrimonial Court's Order, on April 25, 2017, the Matrimonial Court entered an Order quashing the subpoenas, finding Billet in contempt of court and entering sanctions against Billet.

**D. <u>Billet's Fraudulent Inducement Of The 2017 Confidentiality Agreement.</u>**

37. Having failed in his efforts to obtain discovery from Drexler in the Matrimonial Action and having been held in contempt for his violation of the court's order preventing him from obtaining such discovery, Billet next embarked on a course of conduct designed to induce Drexler and other non-parties to disclose the information that Billet had otherwise been unable to obtain.

38. Thus, in March 2017, Billet -- through his counsel -- represented to Drexler that he would maintain the confidentiality of any financial information provided by Drexler and the other non-parties. However, unbeknownst to Drexler at the time, Billet -- contrary to his representations -- had no intention of maintaining the confidentiality of the information he obtained from Drexler, and instead intended to use such information in the New York Action and to commence other litigations against Drexler, his family and the entities with which they transact business, which is precisely what Billet did.

39. On March 30, 2017, Drexler -- unaware of Billet's true intentions -- entered into a confidentiality agreement with Billet (the "2017 Confidentiality Agreement"). Drexler executed the 2017 Confidentiality Agreement in California, while Billet executed it in New York.

40. The 2017 Confidentiality Agreement expressly provides that the information produced to Billet by Drexler and the other parties to the agreement "shall be used solely in connection with the pending matrimonial action between Jodi [Drexler-Billet] and Bradford [Billet.]"

41. The 2017 Confidentiality Agreement also provides that either party shall be entitled to temporary and permanent injunctive relief from any court of competent jurisdiction in the event of a breach of the agreement. To that end, the 2017 Confidentiality Agreement expressly states

that, by entering into the agreement, Drexler was not submitting to the jurisdiction of the State of New York.

42. After execution of the 2017 Confidentiality Agreement, Drexler and the other parties to the agreement produced certain confidential documents and information to Billet pursuant to the parties' agreement, along with a confidential report from their accounting firm that was based on the information produced pursuant to the agreement.

**E. Billet's Breaches of the 2017 Confidentiality Agreement.**

43. Consistent with Billet's undisclosed intentions, Billet used the confidential information provided by Drexler and others pursuant to both the 2014 and 2017 Confidentiality Agreements to file and serve a complaint in the New York Action and to initiate an action in this Court, in direct violation of the 2014 and 2017 Confidentiality Agreements.

44. Indeed, on November 3, 2017, after Billet's litigation counsel withdrew, Billet, through replacement counsel, filed a complaint in the New York Action.

45. That same day, Billet filed a substantially similar complaint in the United States District Court for the Central District of California (the "California Action").

46. Both complaints allege -- as Billet previously alleged in the Matrimonial Action -- that Drexler assisted Drexler-Billet in concealing millions of dollars in alleged martial assets from Billet. In addition, both complaints assert a litany of claims against Drexler, Drexler-Billet, the Drexler family, MusclePharm and numerous other entities with which the Drexlers conduct business, including, among other things, that those entities supposedly formed a racketeering enterprise and conspiracy to deprive Billet of his alleged marital share.

47. Although the conclusions stated by Billet in the New York and California Actions are patently false and fail to state a cause of action, they are plainly based on the information provided by Drexler and the other parties to the 2017 Confidentiality Agreement and by Drexler-

Billet pursuant to the 2014 Confidentiality Agreement. To that end, the complaints in both actions distort and contort the confidential information provided by Drexler and Drexler-Billet -- information that Billet only obtained based on the false representation that he would maintain the confidentiality of such information and would not use such information in other litigations -- in an effort to harass Drexler.

48. As Billet plainly intended, Drexler already has suffered significant and irreparable harm as a result of Billet's breaches of the 2014 and 2017 Confidentiality Agreements, and is likely to suffer additional harm. Indeed, MusclePharm's board of directors and lenders, along with other entities with which Drexler conducts business, have inquired concerning the New York and California Actions, and such inquiries from those and other parties are certain to continue, thereby impeding Drexler's ability to transact his personal and business affairs.

**FIRST CAUSE OF ACTION**

**(Fraudulent Inducement)**

49. Drexler realleges paragraphs 1 through 48 as if fully set forth herein.

50. Billet made misrepresentations and omissions of material facts to Drexler that were intended to induce Drexler to produce personal and confidential information to Billet and to enter into the 2017 Confidentiality Agreement.

51. Specifically, Billet represented to Drexler that, among other things, Billet intended to maintain the confidentiality of the documents and information produced by Drexler, and Billet would not use the information produced by Drexler in other litigations. Moreover, Billet failed to disclose to Drexler his intention to file separate litigations against Drexler and to use the information provided by Drexler in those litigations.

52. Billet made the misrepresentations and omissions of fact with the intention that Drexler rely on them by disclosing personal and confidential information to Billet and by entering into the 2017 Confidentiality Agreement.

53. As to Billet's omissions of material facts, Billet had a duty to disclose such facts in light of, among other things, the nature of Billet's relationship with Drexler, the surrounding circumstances, Billet's superior knowledge concerning his true intentions, and Billet's knowledge that Drexler was acting on mistaken belief.

54. Drexler reasonably relied on Billet's misrepresentations and omissions of material facts by disclosing personal and confidential information to Billet, and by entering into the 2017 Confidentiality Agreement.

55. As a direct and proximate result of Billet's actions, Drexler has been damaged in an amount in excess of $75,000.

56. Billet's actions were willful, malicious, wanton and without regard to Drexler's rights, warranting the imposition of punitive damages.

**SECOND CAUSE OF ACTION**

**(Breach of Contract -- 2017 Confidentiality Agreement)**

57. Drexler realleges paragraphs 1 through 48 as if fully set forth herein.

58. The 2017 Confidentiality Agreement constitutes a valid and binding contract on the parties to the contract.

59. Drexler fully performed all of his obligations under the 2017 Confidentiality Agreement.

60. Billet materially breached the 2017 Confidentiality Agreement by, among other things, using in the New York and California Actions the confidential information that he obtained from Drexler and the other parties to the contract.

61. As a direct and proximate result of Billet's breach of the 2017 Confidentiality Agreement, Drexler has suffered damages in an amount in excess of $75,000.

62. All conditions to this cause of action have been performed or waived.

63. Drexler also is entitled to injunctive relief against Billet because Drexler does not have an adequate remedy at law inasmuch as monetary damages will not be sufficient to fully compensate Drexler for the damage caused by Billet's breaches of the 2017 Confidentiality Agreement.

**THIRD CAUSE OF ACTION**

**(Breach of Contract -- 2014 Confidentiality Agreement)**

64. Drexler realleges paragraphs 1 through 48 as if fully set forth herein.

65. The 2014 Confidentiality Agreement constitutes a valid and binding contract between the parties thereto.

66. Drexler is an intended third-party beneficiary of the 2014 Confidentiality Agreement. Drexler-Billet and Billet intended Drexler to benefit under the 2014 Confidentiality Agreement because, reading the contract as a whole in light of the circumstances under which it was entered, Drexler is a member of the class of persons for whose benefit the 2014 Confidential Agreement was made.

67. Billet materially breached the 2014 Agreement by, among other things, using in the New York and California Actions the confidential information that he obtained pursuant to the contract.

68. As a direct and proximate result of Billet's breach of the 2017 Confidentiality Agreement, Drexler has suffered damages in an amount in excess of $75,000.

69. All conditions to this cause of action have been performed or waived.

70. Drexler also is entitled to injunctive relief against Billet because Drexler does not have an adequate remedy at law inasmuch as monetary damages will not be sufficient to fully compensate Drexler for the damage caused by Billet's breaches of the 2014 Confidentiality Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Drexler prays for relief as follows:

A. On the First Cause of Action, Drexler respectfully requests that the Court enter judgment awarding Drexler the compensatory damages caused by Billet's misconduct, punitive damages, the costs incurred by Drexler in prosecuting this action, including reasonable attorneys' fees, and such further relief as the Court deems just and proper.

B. On the Second and Third Causes of Action, Drexler respectfully requests that the Court enter (i) judgment awarding Drexler the compensatory damages caused by Billet's breaches, the costs incurred by Drexler in prosecuting this action, including reasonable attorneys' fees, and such further relief as the Court deems just and proper, and (ii) an Order permanently enjoining Billet from prosecuting the New York and California Actions, from using the documents and information produced to Billet pursuant to the 2014 and 2017 Confidentiality Agreements in any litigation other than the Matrimonial Action, and from further breaches of the 2014 and 2017 Confidentiality Agreements, and requiring Billet to immediately dismiss the New York and California Actions.

DATED: November 27, 2017

/s/ Daniel A. Saunders
KASOWITZ BENSON TORRES LLP
Daniel A. Saunders (CA Bar No. 161051)
2029 Century Park East
Suite 2000N
Los Angeles, California 90067
Telephone: (424) 288-7900

*Attorneys for Plaintiff Ryan Drexler*

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues that may be so tried as of right.

DATED: November 27, 2017

/s/ Daniel A. Saunders
KASOWITZ BENSON TORRES LLP
Daniel A. Saunders (CA Bar No. 161051)
2029 Century Park East
Suite 2000N
Los Angeles, California 90067
Telephone: (424) 288-7900

*Attorneys for Plaintiff Ryan Drexler*